United States District Court
Southern District of Texas
**ENTERED**
September 04, 2020
David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **ALEXANDRA JADE WORSHAM,** | § | |
| **individually and on behalf of all others** | § | |
| **similarly situated,** *et. al.***,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:16-CV-2712** |
| | § | |
| **B.G. PROPERTY MANAGEMENT, LLC,** | § | |
| *et. al.***,** | § | |
| | § | |
| **Defendants.** | | |

<u>**MEMORANDUM AND RECOMMENDATION**</u>

Pending before the Court[1] are Plaintiffs' Motion for Partial Summary Judgment (Dkt.  No. 57) and Defendants' No-Evidence Motion for Summary Judgment (Dkt. No. 58). The Court has considered the motions, the responses, the replies, the evidence, and the applicable law. For the reasons set forth below, the Court **RECOMMENDS** that Plaintiffs' Motion for Partial Summary Judgment be **GRANTED IN PART** and **DENIED IN PART**, and Defendants' Motion for Summary Judgment be **DENIED**. Plaintiffs' Motion for Leave to Supplement the Summary Judgment Record (Dkt. No. 68) is **GRANTED**.

### I. Case Background

Plaintiffs Alexandra Jade Worsham ("Worsham") and Ruth Ashe-Lilley ("Ashe-Lilley") (collectively, "Plaintiffs") filed this action alleging that Defendants B.G. Property Management,

---

[1] The District Judge referred the entire case to the Magistrate Judge for full pretrial management pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure ("Rule") 72. *See* Dkt. No. 51.

LLC, Juan Hernandez ("Hernandez Jr."), Juan "Guero" Hernandez ("Guero"), Guero Family Limited Partnership ("Guero FLP") and Houston Rooming Houses, LLC (collectively, "Defendants") violated the Fair Labor Standards Act[2] ("FLSA") by failing to pay them and other similarly situated property managers minimum wage and overtime.[3] Ashe-Lilley also alleges that Defendants violated the FLSA by firing her in retaliation for her participation in this lawsuit.[4]

## A.  Factual Background

Defendants operate Houston Rooming Houses, a business that rents out private, furnished rooms in at least 13 houses around Houston.[5] The houses vary in size from approximately 12 rooms to 55 rooms.[6] Some rooms hold up to two tenants, depending on the room size.[7] Most tenants are on month-to-month leases and must pay with cash or money order.[8] Defendants admit that their business satisfies the FLSA's threshold of $500,000 annual gross volume of sales made or business done.[9]

Defendants employed Plaintiffs as on-site property managers.[10] A property manager's daily responsibilities include:

- cleaning the communal kitchens and bathrooms, sweeping and mopping the common

---

[2] *See* 29 U.S.C. §§ 201–219.

[3] Dkt. No. 70 at 1.

[4] *Id.* at 10–11.

[5] *See* Dkt. No. 57-8 at 2; Houston Rooming Houses, https://www.houstonroominghouses.com (last visited August 20, 2020); *see also* Houston Rooming Houses, http://www.roominghouses.net (last visited August 20, 2020).

[6] *See* Dkt. No. 57-1 at 3; Dkt. No. 57-2 at 5; Dkt. No. 67-1.

[7] *See* Dkt. No. 57-1 at 3; Dkt. No. 57-2 at 3.

[8] *See* Dkt. No. 57-3 at 4; Dkt. No. 57-7 at 3; Dkt. No. 57-8 at 10.

[9] *See* Dkt. No. 20 at 3. Defendants admitted this in their original answer (*id.*), but later denied it in their amended answer (Dkt. No. 73 at 2). During a hearing held August 5, 2020, Defendants' counsel explained that the denial made in the amended answer only relates to Guero FLP and it is still admitted as to the remaining Defendants.

[10] *See* Dkt. No. 57-8 at 3–5.

areas, and taking out the trash;

- collecting rent payments, writing receipts, monitoring drop box for rent payments, posting eviction notices, sorting and delivering mail;
- taking phone calls from prospective tenants, showing rooms to prospective tenants, collecting information from prospective tenants for background checks, cleaning and preparing rooms for incoming tenants;
- accepting delivery of cleaning supplies or shopping for needed supplies;
- taking meter readings, reporting necessary repairs, tracking room vacancies and the amount of cash on-hand;
- communicating with and reporting to company supervisors and main-office personnel; and
- responding to emergencies and tenants' needs.[11]

Property managers are paid a flat weekly salary regardless of hours worked.[12] The salary varies based on location, but generally begins at $200 per week.[13] In addition to their weekly salary, property managers can earn bonuses.[14] In some cases, property managers receive a bonus if all tenants in their housing unit make timely payments or if there are no vacancies.[15] Bonuses also vary between $25 to $300.[16] Property managers are paid in cash.[17]

Houston Rooming Houses was originally operated by Hernandez Jr.[18] His son, Guero, later took over and has run the business for the past six years.[19] When the business was overseen by Hernandez Jr., rent payments were deposited into a bank and the hours worked by property managers were tracked by timesheets.[20] Hernandez Jr. stated that he personally did not keep track

---

[11] *See* Dkt. No. 57-1 at 2–3; Dkt. No. 57-2 at 2, 8–9; Dkt. No. 57-3 at 3; Dkt. No. 58-2 at 1; Dkt. No. 67-1; Dkt. No. 67-2 at 1.

[12] *See* Dkt. No. 57-7 at 6; Dkt. No. 57-8 at 7.

[13] *See* Dkt. No. 57-1 at 14; Dkt. No. 57-2 at 10; Dkt. No. 57-3 at 7; Dkt. No. 57-4 at 2; Dkt. No. 57-7 at 5–6; Dkt. No. 57-8 at 7.

[14] *See* Dkt. No. 57-7 at 5; Dkt. No. 57-8 at 7.

[15] *See* Dkt. No. 57-7 at 5; Dkt. No. 57-8 at 7; Dkt. No. 67 at 9.

[16] *See* Dkt. No. 57-1 at 10; Dkt. No. 57-7 at 5; Dkt. No. 57-8 at 7; Dkt. No. 57-2 at 10.

[17] *See* Dkt. No. 57-5 at 3; Dkt. No. 57-8 at 7.

[18] *See* Dkt. No. 57-7 at 1, 4; Dkt. No. 57-8 at 3.

[19] *See* Dkt. No. 57-7 at 1; Dkt. No. 57-8 at 3.

[20] *See* Dkt. No. 57-7 at 3; Dkt. No. 57-4 at 2; Dkt. No. 72-5 at 1; Dkt. No. 72-6 at 1.

of the property managers' hours because he was concerned with the percentage of vacancies and not how many hours the property managers were working. [21] He testified that property managers were paid to work eight hours a day, six days a week, but also acknowledged he never did any calculations to determine whether property managers were paid minimum wage.[22] Once Guero took over the company, he no longer deposited money into a bank and he ended the practice of recording the hours worked by individual property managers on time sheets.[23]

Defendants do not keep any kind of employment records, such as employee paperwork or payroll information.[24] Defendants do not provide their employees pay stubs or W-2s, withhold money from employee's wages for Social Security or Medicare, or pay unemployment taxes or franchise taxes to the State of Texas.[25] Finally, Defendants do not know whether they are registered with the Texas Workforce Commission.[26]

The parties disagree on certain property manager requirements and work hours.

### a.  Plaintiffs' Evidence

Office hours are from 8:00 a.m. to 6:00 p.m., Monday through Saturday.[27] These office hours are posted on a sign at one of Defendants' houses, the "Bayou House."[28] Property managers are expected to remain on-site during office hours and often need to work after office hours have

---

[21] *See* Dkt. No. 57-7 at 6.
[22] *See id.*
[23] *See* Dkt. No. 57-8 at 4–5; Dkt. No. 72-6 at 1.
[24] *See* Dkt. No. 57-7 at 6; Dkt. No. 57-8 at 5.
[25] *See* Dkt. No. 57-7 at 4.; Dkt. No. 57-8 at 6-8.
[26] *See* Dkt. No. 57-8 at 8.
[27] *See* Dkt. No. 57-1 at 5–6; Dkt. No. 57-2 at 1, 11; Dkt. No. 57-3 at 3; Dkt. No. 57-4 at 1; Dkt. No. 57-5 at 2; Dkt. No. 68-1 at 2; Dkt. No. 72-5 at 2.
[28] *See* Dkt. No. 57 at 3; Dkt. No. 57-2 at 1–2; Dkt. No. 57-3 at 8; Dkt. No. 57-6.

ended.[29] Property managers are also required to live at the property they manage.[30] Each manager is provided with a company cell phone and is expected to answer any incoming calls.[31] Therefore, they are required to work ten hours a day (not including a lunch break), six days a week, equating to a 60-hour workweek.[32]

One property manager, Ashe-Lilley, joined the current lawsuit on February 2, 2017 while still employed by Defendants.[33] Plaintiffs filed their first Motion for Default Judgment on February 6, 2017.[34] Later, Ashe-Lilley received a phone call from David Barajas ("Barajas").[35] Barajas is Defendants' former general manager and Hernandez Jr.'s son and Guero's half-brother.[36] Barajas asked Ashe-Lilley to verify her full legal name.[37] Days later, on February 11, 2017, Ashe-Lilley was terminated.[38]

**b.  Defendants' Testimony**

Office hours are from 8:00 a.m. to 5:00 p.m., Monday through Saturday.[39] However, property managers never work more than 32 hours per week and are effectively part-time employees.[40] Property managers are neither required to live on-site nor required to remain on-site

---

[29] *See* Dkt. No. 57-1 at 2, 6; Dkt. No. 57-2 at 7; Dkt. No. 57-3 at 5; Dkt. No. 68-1 at 2.
[30] *See* Dkt. No. 57-1 at 2; Dkt. No. 68-1 at 3.
[31] *See* Dkt. No. 57-1 at 4, 8; Dkt. No. 57-2 at 9; Dkt. No. 68-1 at 3.
[32] *See* Dkt. No. 57 at 3.
[33] Dkt. No. 27.
[34] Dkt. No. 8.
[35] *See* Dkt. No. 63-2 at 1–2.
[36] *See* Dkt. No. 58-3; Dkt. No. 63-3.
[37] *See* Dkt. No. 63-2 at 1–2.
[38] *See* Dkt. No. 26-2 at 2.
[39] *See* Dkt. 57-7 at 6.
[40] *See* Dkt. No. 57-7 at 6; Dkt. No. 58 at 2; Dkt. No. 58-2; Dkt. No. 67-1 at 2; Dkt. No. 67-2 at 2.

during office hours.[41] They are allowed to leave the property at their leisure and may respond to calls within a reasonable time.[42] If property managers choose to live on-site, the value of the room is considered part of their wages.[43]

Defendants fired Ashe-Lilley for stealing.[44] Barajas caught Ashe-Lilley renting out rooms, marking them as vacant, and keeping the money for herself.[45] Barajas reported the misconduct to Guero and was authorized to fire Ashe-Lilley.[46]

## B. Procedural Background

Worsham filed her original complaint September 7, 2016.[47] Ashe-Lilley joined the lawsuit February 2, 2017.[48] On June 28, 2018, Plaintiffs filed a motion to certify a class, which was later unopposed by Defendants.[49] The Court granted the motion, certifying the following class:

> All current and former Property Managers (or "House Managers") who worked for B.G. Property Management at any time during the three years before September 7, 2016 up to the present and were not paid overtime compensation or minimum wage.[50]

Four former property managers, Thurman Gibson ("Gibson"), Teri Grimmett ("Grimmett"), Debra Ann Donaldson ("Donaldson"), and Tori Enard ("Enard"), have since joined as opt-in Plaintiffs.[51]

---

[41] *See* Dkt. No. 57-7 at 6; Dkt. No. 67-1 at 2; Dkt. No. 67-2 at 2.
[42] *See* Dkt. No. 57-7 at 6. Dkt. No. 67-1 at 2; Dkt. No. 67-2 at 3.
[43] *See* Dkt. No. 57-7 at 5; Dkt. No. 57-8 at 7, 10–11.
[44] *See* Dkt. No. 58-2; Dkt. No. 58-3.
[45] *See* Dkt. No. 58-2; Dkt. No. 58-3.
[46] *See* Dkt. No. 58-2; Dkt. No. 58-3.
[47] Dkt. No. 1.
[48] Dkt. No. 7.
[49] Dkt. Nos. 26–28, 31.
[50] Dkt. No. 26 at 3; *See* Dkt. No. 31.
[51] Dkt. Nos. 33, 35, 37.

Plaintiffs filed their pending motion for partial summary judgment January 16, 2020.[52] Defendants filed their own motion for summary judgment on the same day.[53] Plaintiffs filed a motion for leave to supplement the summary judgment record in response to Defendants' summary judgment motion March 11, 2020.[54]

The briefing is complete. The Court will first address the parties' evidentiary objections and Plaintiffs' Motion for Leave before turning to the merits of the two pending dispositive motions.

## II. Evidentiary Objections

A party must support its factual positions on summary judgment by citing to particular record evidence. Fed. R. Civ. P. 56(c)(1). Rule 56(c)(2) allows a movant to object to exhibits containing material that "cannot be presented in a form that would be admissible in evidence" under the Federal Rules of Evidence. Affidavits or declarations supporting summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Conclusory allegations, unsubstantiated assertions, improbable inferences, and speculation are not competent evidence. *See Roach v. Allstate Indem. Co.*, 476 F. App'x 778, 789 (5th Cir. 2012) (unpublished) (citing *S.E.C. v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

Only relevant evidence is admissible. Fed. R. Evid. 402. Relevant evidence has a "tendency to make a fact more or less probable than it would be without the evidence" and relates to a fact "of consequence in determining the action." Fed. R. Evid. 401.

---

[52] Dkt. No. 57.
[53] Dkt. No. 58.
[54] Dkt. No. 68.

Hearsay is not admissible evidence. Fed. R. Evid. 802. Hearsay is a statement, not made while testifying in the current litigation, that is offered for "the truth of the matter asserted in the statement." Fed. R. Evid. 801. Statements offered against an opposing party that were made by "the party's agent or employee on a matter within the scope of that relationship" and statements "by the party in an individual or representative capacity" are not hearsay. Fed. R. Evid. 801(d)(2).

Although conclusory allegations, unsubstantiated assertions, improbable inferences, and speculation are not admissible, a party's subjective belief itself is not excluded under the Federal Rules of Evidence and may be relevant. Whether a subjective belief is admissible, for example to show motivation, is a different issue from whether it alone is sufficient evidence to defeat summary judgment, which it is not. *Cf. Rodriguez v. Wal-Mart Stores, Inc.*, 540 F. App'x 322, 327 (5th Cir. 2013) (unpublished) (citing *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996), *superseded by statute on other grounds by* 28 U.S.C. § 636(b)(1)) ("An employee's subjective belief is insufficient to establish discriminatory motive.").

## A.  Defendants' Objections

Defendants challenge deposition testimony from four Plaintiffs and Defendants' former office manager, two bulletin board photographs, and two timesheets.[55]

### a.  Depositions

Defendants object to Ashe-Lilley, Worsham, and Grimmett's deposition testimony on the

---

[55] Defendants also object to "Plaintiffs' Exhibit 2, which is not evidence, but pages taken out of lawyer-prepared initial disclosures." Dkt. No. 71 at 3. Plaintiffs offered such exhibit to show that Defendants had notice of their damages and not for the truth of the matter. Dkt. No. 63 at 3–4. Defendants' objection is overruled because the Court is only considering this exhibit for notice purposes and not for the truth of the matter.

basis that testimony regarding hours worked is inadmissible hearsay.[56]

- In Ashe-Lilley's deposition, she referenced conversations with "Kaleb", David "Red" Barajas, and "Sandra."[57]
- In Grimmett's deposition, she referenced a conversation with "Elizabeth Hughes," Defendants' manager who trained her, and referred to a sign reflecting office hours.[58]
- In Worsham's deposition, she identified many individuals employed by Defendants with whom she spoke to regarding work hours, including Ulysses Hernandez, "James," and Marcos Hernandez.[59]

Defendants contend that most, if not all, of these individuals are "unknown."[60] However, Defendants' *own* disclosures identify Kaleb, Sandra, Barajas, Ulysses, Marcos, and James as Defendants' employees.[61] Defendants' disclosures describe each individual as having "knowledge of relevant facts as to job duties, pay, and hours."[62] The information communicated by these individuals regarding work hours constitute statements offered against an opposing party and are not hearsay. *See* Fed. R. Evid. 801(d)(2).

Defendants also object to Susan McGregor's ("McGregor") deposition testimony on the basis that it is hearsay and not based on personal knowledge.[63] McGregor is Defendants' former office manager and regularly communicated with property managers and prepared property manager timesheets.[64] McGregor's testimony regarding property managers is based on personal

---

[56] Dkt. No. 67 at 2–4.

[57] Dkt. No. 57-1 at 2–3.

[58] Dkt. No. 57-2 at 1–2, 11.

[59] Dkt. No. 57-4 at 1.

[60] *See* Dkt. No. 67 at 2–3.

[61] Dkt. No. 72 at 1; Dkt. No. 49-3. Elizabeth Hughes is not listed in Defendants' disclosures as a former employee. However, Grimmett specifically named Elizabeth Hughes as Defendants' manager who trained her. Dkt. No. 57-2 at 1–2, 11.

[62] Dkt. No. 49-3.

[63] Dkt. No. 67 at 4.

[64] Dkt. No. 57-5 at 2; Dkt. No. 72-5 at 1.

knowledge and is not hearsay. *See* Fed. R. Evid. 801.

Finally, Defendants object to Gibson's deposition testimony on the basis that his testimony regarding hours displayed on a bulletin board do not relate to the hours worked issue.[65] To the extent that Defendants are making a relevance argument, the Court disagrees. Gibson's testimony goes directly to the hours worked issue.

Defendants' objections to Plaintiffs' depositions are overruled.

**b.  Photographs**

Defendants object to a photograph of a bulletin board sign and a photograph of the bulletin board itself. Defendants argue "[w]ho took these pictures, where, and when, are all unknown. It is not clear what this purports to be, or whose claims this may be relevant to, or how, if it is at all."[66] Pursuant to Federal Rule of Evidence 901, authentication is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." A witness authenticating a photograph does not need to be the photographer. *See United States v. Clayton*, 643 F.2d 1071, 1074 (5th Cir. 1981); *United States v. Rochan*, 563 F.2d 1246, 1251 (5th Cir. 1977).

Plaintiffs contend the sign is posted in Defendants' "Bayou House" location and reflects the office hours for property managers.[67] Further, Plaintiffs assert that Gibson is a current Bayou House resident and that he described the sign in his deposition.[68] Grimmett also testified about an office hours sign.[69] The Court finds Plaintiffs' deposition testimony is sufficient to support a finding that the photographs are what they purport to be.

---

[65] Dkt. No. 57-5 at 3.

[66] *Id.* at 4.

[67] *See* Dkt. No. 57 at 3; Dkt. No. 57-2 at 1–2; Dkt. No. 57-3 at 8; Dkt. No. 57-6.

[68] *See* Dkt. No. 57-3 at 1, 8.

[69] *See* Dkt. No. 57-2 at 1–2, 11.

Defendants also contend that, even if the photographs are admitted into evidence, it is not clear that they "go to hours worked under the FLSA."[70] To the extent this is a relevance argument, the photographs go directly to the hours worked issue as all Plaintiffs contend their hours matched the office hours shown in the photographs. As such, the photographs have a "tendency to make a fact more or less probable than it would be without the evidence" and relate to a fact "of consequence in determining the action." Fed. R. Evid. 401. The photographs are relevant. Accordingly, Defendants' objections to Plaintiffs' photographs are overruled.

### c.  **Timesheets**

Defendants object to two timesheets, which Defendants themselves produced during discovery, on the grounds that the timesheets are not authenticated.[71] Defendants acknowledge that, while these documents were found on one of Defendants' properties and produced in the course of discovery, "it remains unclear who made these documents, when, or why."[72] Plaintiffs contend that these typed timesheets were provided by Defendants who "explained the notations, how the documents were purportedly created and did not deny that the timesheets are their company records."[73] In reviewing Guero's deposition testimony, the Court finds that Defendants authenticated the timesheets themselves. Accordingly, Defendants' objections to the typed timesheets are overruled.

## B.  **Plaintiffs' Objections**

Plaintiffs object to Barajas, Guero, and Hernandez Jr.'s declarations.[74]

---

[70] Dkt. No. 67 at 4.
[71] *Id.* at 5.
[72] *Id.*
[73] Dkt. No. 72 at 3; *See* Dkt. No. 72-6 at 1.
[74] Dkt. No. 63 at 9. It is unclear to the Court whether Plaintiffs objected to Hernandez Jr.'s

Plaintiffs argue Barajas is not a party to this litigation and no longer works for the company, making his declaration inadmissible hearsay.[75] While employed by Defendants, Barajas personally witnessed Ashe-Lilley's alleged misconduct at work, reported her to Guero, and was ultimately responsible for terminating her.[76] The information communicated by Barajas regarding Ashe-Lilley's alleged misconduct and termination constitute statements offered against an opposing party and are not hearsay. *See* Fed. R. Evid. 801(d)(2).

As to Guero, Plaintiffs argue he does not have personal knowledge of the facts concerning Ashe-Lilley's termination.[77] Declarations offered in support of, or in opposition to, summary judgment must be based on personal knowledge. Fed. R. Civ. P. 56(c)(4). The evidence rule governing the need for personal knowledge further requires a submitting party to lay a proper foundation that a witness has personal knowledge of the matter about which he will testify. Fed. R. Evid. 602. In paragraph 10 of Guero's declaration, Guero states that he spoke to Barajas about Ashe-Lilley's alleged misconduct and authorized her termination.[78] Guero thus has personal knowledge of the facts concerning Ashe-Lilley's termination

Finally, Hernandez Jr.'s declaration lacks proper foundation as to Ashe-Lilley's termination because he was neither running the business at that time nor consulted by Barajas about Ashe-Lilley's alleged misconduct.

Accordingly, Plaintiffs' objections to Barajas and Guero's declarations are overruled, and

---

declaration or Guero's declaration. To avoid confusion, the Court will construe Plaintiffs' objections as applied to both Defendants.

[75] *Id.*

[76] Dkt. No. 58-3.

[77] Dkt. No. 63 at 9.

[78] Dkt. No. 58-2 at 2.

their objection to Hernandez Jr.'s declaration is sustained.

## C.  Rule 37(c) Violations

### a.  Plaintiffs' Request

Plaintiffs request the Court to strike Terrance Johnson's ("Johnson") declaration under Rule 37(c) because Defendants did not disclose the witness under Rule 26(a)(1).[79] Rule 37 states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Defendants have offered no explanation for failing to designate Johnson even though they have had ample time to do so. Nor have they explained why the failure is "substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). Johnson's declaration should arguably be struck. However, the Court finds Defendants' failure to disclose Johnson did not harm Plaintiffs. Although Johnson's declaration generally corroborates Defendants' contentions regarding the overtime issue, it does not specifically refute whether any Plaintiff in this litigation worked overtime. Additionally, Johnson's declaration did not raise any new issues requiring Plaintiffs' response. Accordingly, Plaintiffs' request is denied, but they are permitted to depose Johnson if they still wish to do so.

### b.  Defendants' Request

In Defendants' Motion for Summary Judgment, Defendants request that the Court strike Enard and Donaldson under Rule 37 for failing to appear at their depositions.[80] To the extent Defendants are moving the Court to dismiss two opt-in plaintiffs from the case, although it is

---

[79] Dkt. No. 72 at 3.
[80] Dkt. No. 58 at 2.

proper relief sought under Rule 37, it is too drastic. Accordingly, Defendants' request is denied. Plaintiffs, however, shall present Enard and Donaldson for depositions if Defendants still wish to depose them.

Plaintiffs moved for protective orders as to Enard and Donaldson under Rule 37(d)(2) and Rule 26(c) in response to Defendants' request. Plaintiffs' requests are denied as moot.

### III. Motion for Leave

Before considering the motions for summary judgment, the Court must address Plaintiffs' Motion for Leave to submit Donaldson's supplemental declaration.[81] In her declaration, Donaldson testified about her work hours, pay rate, and responsibilities as an on-site property manager for Defendants.[82]

Plaintiffs intend to rely on the representative evidence provided by the similarly situated property managers for summary judgment purposes. However, Defendants oppose the use of representative evidence. Defendants further argue that there is "no evidence whatsoever for any claim" by Ms. Donaldson.[83] In response, Plaintiffs have provided Donaldson's declaration and argue that, while the representative evidence alone is sufficient to survive summary judgment, Donaldson's declaration is still "highly relevant to the claims and defenses in this case."[84] Defendants counter that the declaration "consists of bare assertions" as to hours worked and gives no "weekly hours estimate."[85] Thus, Defendants contend the declaration does not defeat summary judgment.

---

[81] Dkt. No. 68.
[82] Dkt. No. 68-1.
[83] Dkt. No. 58 at 2.
[84] Dkt. No. 68 at 2.
[85] Dkt. No. 71 at 3.

Here, Plaintiffs submitted Donaldson's declaration in reply to Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment. It did not raise any new issues requiring Defendants' further response. Accordingly, Plaintiffs' Motion for Leave to Supplement the Summary Judgement Record is granted. As previously stated, Plaintiffs shall present Enard and Donaldson for depositions if Defendants still wish to depose them.

## IV. Legal Standards

### A. <u>Summary Judgment</u>

Rule 56(a) instructs the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019). Where both parties have moved for summary judgment, as to each party's motion, all inferences on summary judgment must be drawn in favor of the nonmoving party, to the extent that if there appears to be some evidentiary support for the disputed allegations, that motion must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *McAllister v. R.T.C.*, 201 F.3d 570, 574 (5th Cir. 2000). The movant is tasked with the initial burden of informing the Court of the basis for the motion and pointing to relevant excerpts in evidence that demonstrate the absence of genuine factual issues. *See Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant may also argue that the nonmovant failed to produce evidence in support of at least one element of a cause of action for which he bears the burden of proof. *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017).

If the movant satisfies the initial burden, it shifts to the nonmovant who must produce evidence of a genuine factual dispute; he may not merely rest on the allegations in his pleading.

*See Coastal Agric. Supply, Inc.*, 759 F.3d at 505 (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). In reviewing a motion for summary judgment, the Court bears the responsibility of taking the nonmovant's evidence as true and drawing all reasonable inferences in his favor. *Id.* (quoting *Liberty Lobby, Inc.*, 477 U.S. at 255). But the Court should not accept "[u]nsubstantiated assertions, improbable inferences, [or] unsupported speculation" as sufficient to carry the nonmovant's burden. *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, the Court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Liberty Lobby, Inc.*, 477 U.S. at 254–55.

## B. **FLSA**

The FLSA mandates that employers pay nonexempt employees time-and-a-half overtime for a workweek longer than forty hours and pay all employees the statutory minimum wage. *See* 29 U.S.C. §§ 206(a), 207(a). Any employer that violates these provisions can be held liable for back pay, liquidated damages, and attorneys' fees. *Bridges v. Empire Scaffold, L.L.C.*, 875 F.3d 222, 225 (5th Cir. 2017) (citing 29 U.S.C. § 216(b)-(c)).

To establish a prima facie claim for a violation of overtime-compensation requirements, a plaintiff must prove: "(1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of the overtime compensation due." *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369,

379 (5th Cir. 2019) (quoting *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014)). The same elements of proof can be applied to a minimum-wage claim. *See Smith v. Goforth*, 6:15-CV-324-RP, 2016 WL 6091546 at *2 (W.D. Tex. Oct. 18, 2016) (analyzing alleged violations of both overtime-compensation and minimum-wage requirements under the same framework).

If the employee produces evidence in support of all elements of the prima facie case, the burden shifts to the employer to produce either: (1) evidence of the precise amount of work performed; or (2) evidence demonstrating that the inference to be drawn from the employee's evidence is not reasonable. *Johnson*, 758 F.3d at 630. "If the employer fails to produce such evidence, the court may then award damages to the employee even though the result may only be approximate." *Ihegword v. Harris Cty. Hosp. Dist.*, 555 F. App'x 372, 374 (5th Cir. 2014) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946)). However, an employer cannot be held liable for failing to pay overtime wages if the employee did not notify the employer or "deliberately prevent[ed] the employer from acquiring knowledge of the overtime work." *Id.* (quoting *Harvill v. Westward Commc'ns*, 433 F.3d 428, 441 (5th Cir. 2005)).

A two-year statute of limitations applies to FLSA claims unless the employer's actions were willful; in which case, the statute of limitations is extended to three years. *Parrish*, 917 F.3d at 379 (quoting *Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 248 (5th Cir. 2016)). "Conduct is willful if the employer either knew or showed reckless disregard for whether its conduct was prohibited by the statute." *Cruz v. Maverick Cty.*, 957 F.3d 563, 572 (5th Cir. 2020) (internal quotation marks and alteration omitted) (quoting *Singer v. City of Waco*, 324 F.3d 813, 821 (5th Cir. 2003)).

**V. Analysis**

Plaintiffs assert FLSA claims for unpaid minimum wage, unpaid overtime, willful conduct, and retaliation. Plaintiffs moved for summary judgment on all their claims except retaliation. Defendant moved for summary judgment on all Plaintiffs' claims.

Before turning to the alleged violations, the Court will address the record-keeping issue. Employers subject to the FLSA "shall make, keep, and preserve such records of the person employed by him and of wages, hours, and other conditions and practices of employment maintained by him . . . . " 29 U.S.C. § 211(c). To recover unpaid compensation for hours worked where the employer's records are inaccurate or inadequate, the employee has the burden to "produce[ ] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 Fed. Appx. 448, 455 (5th Cir. 2009) (citing *Mt. Clemens Pottery Co.*, 328 U.S. at 686–87).

In following the *Mt. Clemens* framework, the Court must first determine whether Defendants kept "proper and accurate records" of Plaintiffs' hours. *Mt. Clemens Pottery Co.*, 328 U.S. at 687. The Court finds that Defendants' records were inadequate and inaccurate as it is *undisputed* that Defendants did not regularly keep employment records, including payroll information, as required under 29 U.S.C. § 211(c) or 29 C.F.R. § 516.2.[86] Therefore, Plaintiffs' burden is to produce sufficient evidence to raise a "just and reasonable inference" that they were not paid the statutory minimum wage and that they worked more than forty hours during any week of their employment.

---

[86] Dkt. No. 57-7 at 6; Dkt. No. 57-8 at 7.

## A.  Overtime Payments

The parties do not dispute that an employment relationship existed between them and that Plaintiffs engaged in activities within the FLSA's coverage.[87] The Court must determine, however, whether sufficient evidence exists to prove that the Plaintiffs were "employed" by Defendants for more than 40 hours per week—*i.e.*, that they performed actual work during that time and were not compensated for it. *See Harvill*, 433 F.3d at 441. It must also determine whether sufficient evidence exists to establish "the amount and extent of that work as a matter of just and reasonable inference." *Id.* (quoting *Mt. Clemens*, 328 U.S. at 687–88).

Under the FLSA, an employee is "employed" during the time for which he claims unpaid overtime if the employer "had knowledge, actual or constructive, that he was working." *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (citing *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986)); *see* 29 U.S.C. § 203(g) (defining "employ" to include "to suffer or permit to work"); *Harvill*, 433 F.3d at 441. "'An employer who is armed with [knowledge that an employee is working overtime] cannot stand idly by and allow an employee to perform overtime work without proper compensation.'" *Newton*, 47 F.3d at 748 (quoting *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981)); *see* 29 C.F.R. § 785.13 ("[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them."). "An employee cannot, however, perform overtime work without the employer's knowledge or contrary

---

[87] Dkt. No. 20 at 4; Dkt. No. 73 at 5. As discussed in footnote 9, *supra*, Defendants stated during the August 5, 2020 hearing that the denials made in the amended answer only relate to Guero FLP. Therefore, Defendants only contest the FLSA's applicability as to Guero FLP. The parties are still conducting discovery as to Guero FLP, but Defendants have agreed not to challenge the FLSA's applicability as to the remaining Defendants.

to the employer's directions and then assert a right to be paid." *Ihegword v. Harris Cnty. Hosp. Dist.*, 929 F. Supp. 2d 635, 663 (S.D. Tex. 2013) (Lake, J.), aff'd, 555 F. App'x 372 (5th Cir. 2014). If the employer was neither aware nor on notice that the employee was working overtime, then no violation of the FLSA's overtime provision has occurred. *Harvill*, 433 F.3d at 441 (citing *Newton*, 47 F.3d at 748).

Here, Defendants produced some payroll documents, "Contractor Labor Time Sheets," *undisputedly* showing instances when Plaintiffs worked uncompensated overtime hours. For example, Worsham worked overtime from April 11-16, 2016 and Ashe-Lilley worked overtime from March 7-12, 2016.[88] Defendants contend that these two timesheets are "not authenticated" and "it remains unclear who made these documents, when, or why."[89] This contention is contradicted, however, by Guero's deposition testimony:

> Q. Have you seen these documents before?
> A. Yes.
> Q. Okay. And what are these documents?
> A. They look like contract labor time sheets.
> Q. Okay. And why are these created?
> A. Well, this was the way we used to keep track of hours and loans and stuff like that.
> Q. Okay. And when did you stop doing -- keeping track of them this way?
> A. Pretty much when I took over, but I'm not really sure when exactly we stopped. Maybe a couple years ago or so.
> . . . .
> Q. And how -- how were these documents created? Were they created on a computer?
> A. Most of the time they created them on pen and then transferred

---

[88] Dkt. No. 57-10 at 1-2. Worsham is identified on her Timesheet as "AJ," reflecting Alexandra Jade, her first and middle name. Ashe-Lilley is identified on her Timesheet as "Ruth," reflecting her first name.
[89] Dkt. No. 67 at 5.

over to the computer.

. . . .

Q. But you didn't -- you didn't calculate what you would owe them per hour?

A. I may have owed them maybe halftime, if that, but I don't believe I owe them anything.

Q. So you think whatever you were paying them on that day was enough to compensate them for overtime?

A. Yes.[90]

To show that Plaintiffs have produced *undisputed* instances where Worsham and Ashe-Lilley worked uncompensated overtime, the Court has illustrated below these two timesheets.



[90] Dkt. No. 72-6 at 1, 3. Defendants produced Contractor Labor Time Sheets during discovery (including the two examples provided by Plaintiffs in Dkt. No. 57-10 at 1-2). Guero was questioned about these time sheets during his deposition. His above deposition testimony authenticated the time sheets. However, the excerpts from Guero's deposition submitted by the parties to the Court do not show whether he was questioned about the two specific timesheets provided by Plaintiffs as exhibits. The Court still finds that Guero's deposition testimony authenticated all *similar* Contractor Labor Time Sheets produced by Defendants in discovery and described by Guero in his deposition.

Defendants argue there is no evidence that Plaintiffs gave notice of overtime hours. Notice is not required when the employer already has knowledge. *See Newton*, 47 F.3d at 748. It is clear from these two timesheets that Defendants had actual knowledge that Plaintiffs worked overtime.

Additionally, these two timesheets show that Plaintiffs were not paid proper overtime compensation. According to these timesheets, each Plaintiff worked 48 hours and was paid $300.[91] This equates to $6.25 per hour and therefore does not satisfy either the applicable overtime premium or the $7.25 minimum wage law. Plaintiffs should have been paid *at least* $290 for regular hours (40 hours multiplied by $7.25) and then *at least* $87 for overtime hours (8 hours multiplied by $10.875) thereby totaling $377. Plaintiffs were thus underpaid by $77.

Plaintiffs assert that, although there are not timesheets substantiating each time that they were not paid overtime compensation, it is still undisputed that *every* week they worked more than 40 hours.[92] Plaintiffs cite to the following evidence: each Plaintiff testified that the work hours were Monday through Saturday from 8:00 a.m. to 6:00 p.m., and Defendants' own signs confirmed these office hours; and McGregor's, Defendants' former office manager, deposition testimony corroborated the overtime hours worked *every* week by Plaintiffs.[93]

In contrast, Defendants argue it is undisputed that no property manager including Plaintiffs worked *every* week more than 40 hours.[94] Defendants cite to the following evidence: James

---

[91] The property managers lived on-site. The two timesheets reflect a $100 rent credit given to Plaintiffs by Defendants as part of their compensation for free housing. As will be discussed, *infra,* the Court will not consider the $100 rent credit when calculating the proper compensation paid to Plaintiffs because Defendants did not comply with the applicable federal regulations for claiming such a credit.

[92] Dkt. No. 57 at 9-11.

[93] *Id.*

[94] Dkt. No. 67 at 6; Dkt. No. 58 at 2.

Severance, a property manager employed by Defendant, who presently works at the Sherman House, the same place where Worsham and Grimmett previously worked as property managers, testified that he typically works three to four hours per day;[95] Johnson, a property manager employed by Defendants, who presently works at six different houses, testified that he works less than 40 hours per week;[96] Guero testified that he previously worked as a property manager and the work does not take more than 40 hours per week;[97] and Hernandez Jr. stated in a declaration "I did not know of any property managers working more than 40 hours a week." [98]

Therefore, there remains a factual dispute as to whether Plaintiffs worked *every* week more than 40 hours as substantiated on the Contractor Labor Time Sheets produced by Defendants or whether these were *isolated* occurrences. Although the Court finds that the evidence clearly weighs in Plaintiffs' favor, it still is ultimately up to a jury and not this Court to decide. Additionally, the Court finds that many parts of Guero's deposition testimony were not credible. For example, he testified that he did not know his own wife's or children's names;[99] and he contradicted himself as to both how many hours property managers were supposed to work and the calculation regarding their minimum wage.[100] But again, it is up to the jury to decide Guero's credibility and not this

---

[95] Dkt. No. 67 at 6; Dkt. No. 67-1 at 2.

[96] Dkt. No. 67 at 6; Dkt. No. 67-2 at 2.

[97] Dkt. No. 67 at 6; Dkt. No. 58-2 at 1.

[98] Dkt. No. 58-1 at ¶ 2. The Court notes that Hernandez Jr.'s declaration is replete with improper conclusory assertions because he did not set forth any proper foundation for making these assertions. For example, the first substantive sentence in his declaration states "[d]uring my time working in the business." *Id.* at ¶ 1. But he never states the business he is referring to, his position in the business, or the time period he is referring to. Simply put, he never provides any foundation to support his assertions.

[99] Dkt. No. 57-8 at 1.

[100] Dkt. No. 57-8 at 6; Dkt. No. 72-6 at 1.

Court.

The Court **RECOMMENDS** that summary judgment be **GRANTED** to any Plaintiff in the class where there is a Contractor Labor Time Sheet produced by Defendants *undisputedly* showing that such Plaintiff worked uncompensated overtime (as shown by Worsham working uncompensated overtime from April 11-16, 2016 and Ashe-Lilley working uncompensated overtime from March 7-12, 2016). The Court **RECOMMENDS** that summary judgment be **DENIED** as to all other times where there is not a substantiating Contractor Labor Time Sheet produced by Defendants.

## B.  Minimum Wage

FLSA section 206 mandates that employers pay employees a minimum wage of $7.25 per hour. *Steele v. Leasing Enterprises, Ltd.*, 826 F.3d 237, 242 (5th Cir. 2016) (citing 29 U.S.C. § 206(a)(1)). The Fifth Circuit has not directly considered whether courts should evaluate the FLSA's minimum wage provision using a weekly wage standard (determining the rate by dividing the week's pay by the total hours worked that week) or an hourly wage standard (requiring an employer to pay an employee at least $7.25 for each individual hour of work).[101] However, five other circuits have adopted the weekly wage standard. *See, e.g.*, *U.S. Dept. of Labor v. Cole Enters., Inc.*, 62 F.3d 775 (6th Cir. 1995); *Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 357 (8th Cir. 1986); *Dove v. Coupe*, 759 F.2d 167, 172 (D.C. Cir. 1985); *Blankenship v. Thurston Motor Lines, Inc.*, 415 F.2d 1193, 1198 (4th Cir. 1969); *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490–91 (2d Cir. 1960). District courts in the Fifth Circuit that have considered the

---

[101] In *Albanil v. Coast 2 Coast, Inc.*, the Fifth Circuit followed the weekly average standard used by the district court because the plaintiffs did not object to it. 444 Fed. Appx. 788, 805 n.16 (5th Cir. 2011).

issue have also adopted the weekly wage standard. *See, e.g.*, *Carman v. Meritage Homes Corp.*, 37 F. Supp. 3d 860, 867 (S.D. Tex. 2014); *Magana v. Coleman World Grp.*, LLC, No. EP-16-CV-196-DB, 2017 WL 3841887, at *7 (W.D. Tex. Aug. 31, 2017); *Johnson v. RGIS Inventory Specialists*, 554 F. Supp. 2d 693, 710 (E.D. Tex. 2007).

The Court will follow the weekly wage standard used within the Fifth Circuit and by the majority of other courts: an employer does not violate the FLSA's minimum wage provision if the employee's weekly wage divided by the number of hours worked exceeds $7.25. Here, Houston Rooming Houses was originally operated by Hernandez Jr.[102] When Hernandez Jr. was in charge, he stated that he did not keep track of the property managers' hours because he was concerned with the percentage of vacancies and not how many hours they were working.[103] He testified "[property managers] were supposed to work eight hours a day, six days a week[,]" but acknowledged he never did any calculations to determine whether property managers were paid minimum wage.[104] Guero subsequently took over and has run the business for the past six years.[105] Guero testified that although property manager were not supposed to work more than 32 hours in a week, he calculated the minimum wage for property managers based on a 40-hour work week.[106] Thus, the property managers were paid $7.50 per hour ($300 divided by 40 hours).[107]

Additionally, Defendants assert that weekly bonuses were paid to Plaintiffs for "achieving no vacancies and no late rent payments on their properties" and such bonuses must be considered

---

[102] *See* Dkt. No. 57-7 at 1, 4; Dkt. No. 57-8 at 3.
[103] Dkt. No. 57-7 at 6.
[104] *Id.*
[105] *See* Dkt. No. 57-7 at 1; Dkt. No. 57-8 at 3.
[106] Dkt. No. 57-8 at 6; Dkt. No. 72-6 at 1.
[107] Dkt. No. 72-6 at 1.

when determining whether Plaintiffs were paid minimum wage.[108] For example, Defendants cite to Ashe-Lilley's testimony regarding receiving such bonuses one week where she was paid $150.[109]

Finally, Defendants assert they should receive a $100 per week "rent credit" for housing provided to Plaintiffs.[110] An employer generally may deduct the "reasonable cost" of board, lodging, or other facilities provided to employees. *See* 29 U.S.C. § 203(m). There are three methods an employer can use to ascertain whether any furnished facilities are part of "wages" within the meaning of 29 U.S.C. § 203(m). Defendants, however, did not request a determination from either the Administrator of the Hour and Wage Division or the Secretary of Labor under the second or third methods; consequently, only the method described in 29 C.F.R. § 531.3 is relevant here. *See id.*; 29 C.F.R. § 531.33.

The formula in 29 C.F.R. § 531.3 provides that the reasonable cost to the employer of furnishing his employees with lodging or other facilities is no more than the cost of operation and maintenance, including adequate depreciation, plus a reasonable allowance (not more than five and one-half percent) for interest on the depreciated amount of capital investment by the employer. 29 C.F.R. § 531.3(c). In order to substantiate "actual cost," an employer must "maintain and preserve" records of "itemized accounts showing the nature and amount of any expenditures entering into the computation of the reasonable cost." 29 C.F.R. § 516.27(a)(1).

Here, Defendants failed to comply with the applicable regulations for determining the "reasonable cost" of the rooms. Defendants provided only their own unsubstantiated assertions

---

[108] Dkt. No. 67 at 8-9.
[109] Dkt. No. 57-1 at 14.
[110] Dkt. No. 67 at 8.

that they could have rented certain rooms for $100 to $600 per week.[111] Thus, the Court will not consider a $100 "rent credit" when determining whether Plaintiffs were properly paid the minimum wage. *See Rosales v. Lore*, 149 F. App'x 245, 246–47 (5th Cir. 2005) (unpublished) (holding that an employer could not deduct the fair rental value of lodging furnished to employees from wages owed where employer failed to comply with the applicable regulations for determining the reasonable cost of the lodging and provided only unsubstantiated assertions of its rental value).[112]

Plaintiffs were paid a flat weekly salary beginning at $200 (varying on their location) and were also eligible for weekly bonuses varying between $25 to $300.[113] Defendants contend that Plaintiffs never worked more than 32 hours in a week.[114] Therefore, applying Defendants' *own* calculations, if a Plaintiff was paid either $225 or $200 per week (excluding any "rent credit") and did not receive any weekly bonuses, then the *undisputed* weekly hourly wage was either $7.03 ($225 divided into 32 hours) or $6.25 ($200 divided into 32 hours). Both these amounts are *less* than the $7.25 minimum hourly wage. Any week, however, that a Plaintiff was paid *more* than $250 per week (excluding any "rent credit"), the weekly hourly wage was $7.81 or greater ($250 divided into 32 hours) thereby exceeding the $7.25 minimum hourly wage.

Therefore, the Court **RECOMMENDS** that summary judgment be **GRANTED** to any Plaintiff in the class that was not paid more than $225 during any week (excluding any "rent credit") because it is *undisputed* that the hourly wage was *less* than the $7.25 minimum hourly

---

[111] *Id.*
[112] Although this case is unpublished and therefore not precedent, the Court cites it for its persuasive authority and the similarity to the facts presented here.
[113] *See supra*, footnotes 12-16.
[114] Dkt. No. 57-8 at 6; *See* Dkt. No. 67 at 7.

wage. The Court further **RECOMMENDS** that summary judgment be **GRANTED** to Worsham for work performed from April 11-16, 2016 and to Ashe-Lilley for work performed from March 7-12, 2016 because it is *undisputed* that they both worked 48 hours during those weeks and were only paid $6.25 per hour ($300 divided into 48 hours and excluding any "rent credit"). The Court further **RECOMMENDS** that summary judgement be **GRANTED** to any Plaintiff in the class where there is a Contractor Labor Time Sheet produced by Defendants *undisputedly* showing that such Plaintiff worked overtime (similar to Worsham and Ashe-Lilley) and was paid *less* than the $7.25 minimum hourly wage (excluding any "rent credit").

Finally, the Court **RECOMMENDS** that summary judgment be **DENIED** as to all other Plaintiffs in the class that were paid *more* than $250 per week (excluding any "rent credit") except if there a Contractor Labor Time Sheet produced by Defendants *undisputedly* showing that such Plaintiff worked overtime (similar to Worsham and Ashe-Lilley) and was paid *less* than the $7.25 minimum hourly wage (excluding any "rent credit").[115] Although the Court finds that the evidence weighs in Plaintiffs' favor regarding this issue and thus it is extremely likely that a jury will find that almost all Plaintiffs in the class were *not* paid the minimum hourly wage, it is for the jury and not this Court to make that ultimate finding.

## C. __Retaliation__

Turning to Ashe-Lilley's retaliation claim, Defendants moved for summary judgment and contend Ashe-Lilley was solely terminated for stealing.[116]

---

[115] The Court is not addressing the additional arguments raised by Defendants regarding the number of hours worked each week by Plaintiffs because it is recommending that both Plaintiffs' and Defendants' respective motions for summary judgment be denied as to this issue.

[116] Dkt. No. 58 at 3.

The FLSA also prohibits discrimination against any employee because the employee "filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." 29 U.S.C. § 215(a)(3). A claim for retaliation under the FLSA based on circumstantial evidence follows the burden-shifting evidentiary standard first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Starnes v. Wallace*, 849 F.3d 627, 631 (5th Cir. 2017). The employee must make a prima facie showing of: (1) participation in an activity protected under the FLSA; "(2) an adverse employment action; and (3) a causal link between the activity and the adverse action." *Id.* at 631-32. If the employee is successful, the burden shifts to the employer "to articulate a legitimate, nonretaliatory reason for the adverse action." *Id.* Upon doing so, the burden shifts back to the employee to show that "the proffered reason is a pretext for retaliation." *Id.* at 632.

Here, Ashe-Lilley joined the lawsuit against Defendants on February 2, 2017 and her employment with Defendants was terminated on February 11, 2017.[117] Five days before termination, Plaintiffs filed their first Motion for Default Judgment, naming Ashe-Lilley as a Plaintiff in the case.[118] Plaintiffs argue this five-day period establishes a causal link between her participation in this lawsuit and her wrongful termination. In establishing the causal link for retaliation, temporal proximity is "part of [the] analysis, but not in itself conclusive." *Gee v. Principi*, 289 F.3d 342, 346 n.3 (5th Cir. 2002) (quoting *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992)).

Additionally, Ashe-Lilley testified she received a call after the Motion for Default

---

[117] Dkt. No. 7; Dkt. No. 26-2 at 2.
[118] Dkt. No. 8.

Judgment was filed, but before she was terminated, where Defendants' general manager asked her to verify her full legal name.[119] She later asked why Defendants were inquiring about her name, and was told legal paperwork arrived at the Magnolia House, a property owned by Defendants, and her name was on the lawsuit.[120] The timing of her termination in combination with the suspicious phone call from Defendants' executive satisfies Plaintiff's prima facie burden.

Next, Defendants must articulate a legitimate, nonretaliatory reason for the adverse action. Defendants alleged Ashe-Lilley was terminated for stealing. Barajas was responsible for firing her.[121] In his declaration, Barajas stated that during a property visit in early 2017, he found two people staying in rooms that Ashe-Lilley marked as vacant.[122] Barajas was informed that these people were paying rent to her.[123] Barajas reported this to Guero who authorized Barajas to fire Ashe-Lilley.[124]

If a jury disbelieves that Defendants fired Ashe-Lilley for stealing, then that would be evidence of a retaliatory motive. *See Reeves*, 530 U.S. at 147 ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose."). Drawing all reasonable inferences in Ashe-Lilley's favor, the nonmovant, the Court finds that there is a factual dispute for the jury to decide whether Defendants fired Ashe-Lilley in retaliation for her participation in the current case. The Court **RECOMMENDS** that summary judgment be **DENIED**.

---

[119] Dkt. No. 63-2 at 1.
[120] *See* Dkt. No. 57-1 at 12; Dkt. No. 63-2 at 1–2.
[121] Dkt. No. 58-3.
[122] *Id.*
[123] *Id.*
[124] *Id.*

**D.  Willfulness**

Finally, Plaintiffs argue Defendants showed reckless disregard by failing to keep records and by failing to determine whether their pay practices complied with the FLSA. Defendants contend Plaintiffs put forth no evidence of willfulness.

"[N]either knowledge of the FLSA's potential applicability nor negligent or unreasonable conduct necessarily establishes willfulness." *Mohammadi v. Nwabuisi*, 605 F. App'x 329, 332 (5th Cir. 2015). Plaintiffs assert Defendants' refusal to investigate whether its payment practices complied with federal wage and hour laws shows evidence of willful conduct.[125] Defendants contend they were not aware of either the FLSA or any possible legal problem and that they only learned about the FLSA from this lawsuit.[126] As such, Defendants argue that they do not have a history of past FLSA violations nor have they received any prior complaints regarding the allegations made by Plaintiffs.[127]

Therefore, the Court finds that there is a factual dispute as to whether any FLSA violations by Defendants were willful. Although the Court finds that the evidence clearly weighs in Plaintiffs' favor, it still is ultimately up to a jury to decide and not this Court. The Court **RECOMMENDS** that summary judgment be **DENIED**.

**E.  Plaintiffs' Entitlement to Liquidated Damages, Attorney's Fees and Costs**

Plaintiffs are seeking liquidated damages pursuant to 29 U.S.C. § 216(b) and also attorney's fees and costs pursuant to the same statute and Rule 54(d).[128] The Court has recommended that

---

[125] Dkt. No. 57 at 14.
[126] Dkt. No. 58 at 3.
[127] Dkt. No. 67 at 9.
[128] Dkt. No. 57 at 17-18.

Plaintiffs be granted summary judgment on some claims and therefore Plaintiffs are entitled to attorney's fees and costs and may be entitled to liquidated damages. The Court has further recommended that summary judgment be denied as to Plaintiffs' remaining claims. The amount of attorney's fees, costs and liquidated damages, if any, will be determined by the Court post-trial.

## F.  Defendants' No-Evidence Motion for Summary Judgment

Defendants filed a "no-evidence motion for summary judgment," or in the alternative, partial summary judgment.[129] As discussed, *supra*, genuine issues of material fact exist on all Plaintiffs' claims except where the Court has recommended that Plaintiffs' motion for summary judgment be granted. Accordingly, the Court **RECOMMENDS** that Defendants' no-evidence motion, or partial motion, for summary judgment be **DENIED**.

## VI. Conclusion

Based on the foregoing, the Court **RECOMMENDS** that Plaintiffs' Motion for Partial Summary Judgment be **GRANTED IN PART** and **DENIED IN PART** and Defendants' Motion for Summary Judgment be **DENIED**. Plaintiffs' Motion for Leave to Supplement the Summary Judgment Record is **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk

---

[129] Dkt. No. 58.

electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the Undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

      **SIGNED** in Houston, Texas on September 4, 2020.

Sam S. Sheldon
United States Magistrate Judge